IN THE UNITED STATES DISTRICT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| WILLIAM GALLAHER, II, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. 3:17-CV-1400-M |
| | § | |
| CITY OF MAYPEARL, TEXAS and | § | |
| SHAHID AZZAM MOHAMAD, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are the Motion to Dismiss, filed by Defendant City of Maypearl, Texas (ECF No. 8), and the Motion to Dismiss, filed by Defendant Shahid Mohamad (ECF No. 9). For the following reasons, the motions are **GRANTED**.

**I.    Factual and Procedural Background**

This case arises out of Plaintiff's alleged assault and arrest by Defendant Shahid Mohamad, an officer with the Defendant City of Maypearl, on May 27, 2015 (the "May 27 Incident"). (First Am. Compl., ECF No. 6 ¶¶ 2–3). Plaintiff asserts against Officer Mohammad excessive force and false arrest claims under 42 U.S. § 1983, and state law claims for intentional infliction of emotional distress and assault and battery, in his individual and official capacity. (*Id.* ¶¶ 2–3, 11). In addition, Plaintiff asserts a municipal liability claim under § 1983 against the City of Maypearl. (*Id.*).

Plaintiff is a resident of Maypearl, a small town in Ellis County, Texas. (*Id.* ¶ 63). Plaintiff claims that prior to the May 27 Incident, Officer Mohamad had a negative reputation in Maypearl. (*Id.* ¶¶ 54–55). Specifically, Plaintiff contends that numerous complaints about Officer Mohamad had been made to Maypearl's mayor, city council, and the Maypearl Police

Department ("MPD"), and that Officer Mohamad was "notorious . . . for pulling over citizens for frivolous reasons to harass them." (*Id.* ¶¶ 53–59). Plaintiff alleges that "a grassroots-inspired Facebook campaign was created with a page entitled 'Where's Officer Mohamad?' [and] was used by local citizens to post comments or photos whenever they encountered or had interactions with [Officer] Mohamad in an effort to mitigate his negative impact on the community." (*Id.* ¶ 55). For example, one citizen allegedly posted on the Facebook page:

> "This [O]fficer [Mohamad] was terrorizing our town. The Chief and the Mayor as well as the city council knew of the numerous complaints about this officer. What was done about it from them? NOTHING! . . . Numerous formal complaints were made about him. With the 2000 tickets he was passing out a month he was just a revenue generator for the town. That's why he was let loose to do as he wished."

(*Id.* ¶ 58).

Plaintiff avers that he had two encounters with Officer Mohamad before the May 27 Incident. (*Id.* ¶ 67). The first encounter occurred a few months before the May 27 Incident, when Officer Mohamad allegedly stopped Plaintiff as he was driving to his taxidermy studio in downtown Maypearl. (*Id.* ¶ 69). According to Plaintiff, Officer Mohamad said that he pulled Plaintiff over because Plaintiff was not wearing a seatbelt. (*Id.* ¶ 70). Plaintiff asserts that he had been wearing his seatbelt. (*Id.*). While they were talking, Plaintiff claims he informed Officer Mohamad that he had an outstanding traffic citation from the City of Allen, Texas, which he had received for an expired vehicle registration (the "Allen citation"). (*Id.* ¶ 71). Plaintiff claims he told Officer Mohamad he had not paid the Allen citation, but had "contacted City of Allen officials to make payment arrangements." (*Id.*). Plaintiff alleges that Officer Mohamad ran Plaintiff's license plate number and registration and told Plaintiff "there were 'several' warrants for him for which he could be arrested." (*Id.* ¶ 72). Then Officer Mohamad allegedly said he would give Plaintiff "'30 days' to take care of it," and let Plaintiff leave the scene. (*Id.*).

The second encounter occurred a few weeks later. (*Id.* ¶ 73). Plaintiff was eating at a donut shop in downtown Maypearl, and his truck was parked outside. (*Id.*). As Plaintiff watched through the shop's windows, Officer Mohamad allegedly drove up and parked directly behind Plaintiff's truck, "blocking it in the parking space." (*Id.* ¶¶ 73–74). Officer Mohamad remained in his car for several minutes before driving off and parking across the street. (*Id.*). When Plaintiff left the donut shop, he claims he crossed the street and approached Officer Mohamad's car to "give [Officer Mohamad] an update concerning the Allen citation . . . ." (*Id.* ¶ 75). Plaintiff contends that after he told Officer Mohamad that he had paid off part of the fine for the Allen citation, Officer Mohamad "became visibly angry and yelled at Plaintiff to move to the front of the vehicle, spread his legs apart and put his hands behind his back as though he were going to be arrested." (*Id.* ¶ 76). Officer Mohamad allegedly held Plaintiff's hands behind his back for several moments before releasing Plaintiff and allowing him to leave. (*Id.* ¶ 77).

After these two encounters, Plaintiff claims that he went to speak with Maypearl's Chief of Police, Kevin Coffey, about Officer Mohamad. (*Id.* ¶ 78). Plaintiff allegedly asked Chief Coffey "to get [Officer] Mohamad off his back and give him the opportunity to finish paying off the Allen citation without living in fear of [Officer] Mohamad's bullying tactics and harassment." (*Id.*). Plaintiff contends that Chief Coffey told him, "Don't worry about it. I'll talk to [Officer Mohamad] and take care of it." (*Id.* ¶ 79).

The May 27 Incident occurred when Officer Mohamad pulled Plaintiff over when he was again driving to his taxidermy studio. (*Id.* ¶¶ 81–82). Plaintiff asserts that Officer Mohamad approached Plaintiff's truck "in an aggressive and agitated manner" and "looked visibly angry and upset." (*Id.* ¶¶ 83–84). Plaintiff claims that he "felt extremely fearful and uncomfortable" in light of "Plaintiff's prior history of being harassed and publicly humiliated by [Officer]

Mohamad," and Plaintiff's knowledge "about [Officer] Mohamad's negative reputation in the community for harassing local citizens . . . ." (*Id.* ¶¶ 84–85).

Plaintiff claims that Officer Mohamad said he pulled Plaintiff over for "a 'cracked' tail light . . . ." (*Id*. ¶¶ 66, 86). Then Officer Mohamad, "for no apparent reason and in an outburst of anger," allegedly told Plaintiff to exit his truck. (*Id.* ¶ 87). Plaintiff asserts that at this point, the driver's side door to his truck was open, but it is unclear from Plaintiff's pleadings who opened the door. (*Id.* ¶ 88). Plaintiff alleges that he remained in his truck with his hands visible and explained to Officer Mohamad that "he was scared and felt uncomfortable exiting his vehicle until [Officer] Mohamad called for backup and another officer arrived at the scene." (*Id.* ¶¶ 87–88). According to Plaintiff, Officer Mohamad "became even more furious" and told Plaintiff to exit his truck again. (*Id.* ¶ 89). When Plaintiff hesitated, Officer Mohamad allegedly unholstered his Taser and pointed it at Plaintiff. (*Id.*). Plaintiff claims that he was afraid Officer Mohamad was going to assault him and closed the door to his truck for protection. (*Id.* ¶ 90). Then Officer Mohamad allegedly started to strike Plaintiff's truck with his baton and continued yelling at Plaintiff to exit his truck. (*Id.* ¶ 91). Still in his truck, Plaintiff told Officer Mohamad he was calling 911 to request that another officer report to the scene. (*Id.* ¶ 92). Plaintiff claims that he called 911 and the operator directed Plaintiff to exit his truck, which he did with his hands raised. (*Id.*).

When Plaintiff got out of his truck, Plaintiff asserts that Officer Mohamad "violently yanked Plaintiff's hands behind his back[,] slammed him to the ground," and handcuffed him. (*Id.* ¶ 93). Officer Mohamad then allegedly lifted Plaintiff off the ground and slammed him against the hood of Plaintiff's truck. (*Id.* ¶ 96). Plaintiff contends that he told Officer Mohamad that he had a fused back and was in "extreme pain," but Officer Mohamad responded that "he did

not care." (*Id.* ¶¶ 97–98). Allegedly, Officer Mohamad continued to jerk Plaintiff around by the handcuffs before placing Plaintiff in the back of his police car. (*Id.* ¶¶ 98–99).

While Plaintiff was in the police car, Plaintiff claims that a deputy with the Ellis County Sheriff's Office arrived. (*Id.* ¶ 100). Plaintiff alleges that he sat in the back of the police car for 45 minutes. (*Id.* ¶ 101). Officer Mohamad eventually released Plaintiff, and "said something to the effect that he did not know who Plaintiff was." (*Id.* ¶¶ 102–03). He then left the scene. (*Id.*). Plaintiff asserts that he was never given a citation for a cracked tail light or charged with violating any other law. (*Id.* ¶ 105). As a result of the May 27 Incident, Plaintiff claims that he sustained serious injuries to his wrist and back and was humiliated in front of his fellow citizens. (*Id.* ¶¶ 103–04). Plaintiff alleges that Officer Mohamad resigned from the MPD "[v]ery soon after" the May 27 Incident. (*Id.* ¶ 106).

Plaintiff filed this case on May 25, 2017, and filed his First Amended Complaint on July 24, 2017. On August 7, 2017, the City filed its Motion to Dismiss. The City moves to dismiss Plaintiff's § 1983 municipal liability claim for failure to state a claim under Federal Rule of Civil Procedure ("Rule") 12(b)(6), and Plaintiff's state tort claims against Officer Mohamad, in his official capacity, for lack of subject matter jurisdiction under Rule 12(b)(1). (City Mot. Dismiss, ECF No. 8 at 1–2). On August 8, 2017, Officer Mohamad filed his Motion to Dismiss, arguing Plaintiff's § 1983 claims for excessive force and false arrest against Officer Mohamad in his official capacity should be dismissed for failure to state a claim under Rule 12(b)(6). (Mohamad Mot. Dismiss, ECF No. 9 at 3). Both motions are now ripe for review.

## II. Legal Standards

### A. General Pleading Standard Under Rule 12(b)(6)

A plaintiff fails to state a claim for relief under Rule 12(b)(6) when the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In order to overcome a Rule 12(b)(6) motion, a plaintiff's complaint should "contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference may fairly be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) (quotation omitted). The complaint should not simply contain conclusory allegations, but must be pled with a certain level of factual specificity, and the district court cannot "accept as true conclusory allegations or unwarranted deductions of fact." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (quotation omitted).

### B. Section 1983 Pleading Standard Under Rule 12(b)(6)

Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States . . . ." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). To state a claim under § 1983, a plaintiff must allege facts that show that he has been deprived of a right secured by the Constitution and the laws of the United States, and the defendants were acting under color of state law. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978).

"In the context of municipal liability, as opposed to individual officer liability, it is exceedingly rare that a plaintiff will have access to (or personal knowledge of) specific details regarding the existence or absence of internal policies or training procedures prior to discovery." *Thomas v. City of Galveston*, 800 F.Supp.2d 826, 842 (S.D. Tex. 2011). Thus, a plaintiff need

not "specifically state what the [municipal] policy is" and can rely on "minimal factual allegations" at this stage in the litigation. *Id*. at 842–43. These minimal factual allegations can include "past incidents of misconduct to others, multiple harms that occurred to the plaintiff himself, the involvement of multiple officials in the misconduct, or the specific topic of the challenged policy or training inadequacy." *Id*. at 843–44. Those types of details, together with any additional elaboration possible, help to "satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests," *Twombly*, 550 U.S. at 555 n. 3, and "permit the court to infer more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

## III. Analysis

### A. The City's Motion to Dismiss

The City moves to dismiss Plaintiff's municipal liability claim under § 1983 and Plaintiff's state tort claims for intentional infliction of emotional distress and assault and battery against Officer Mohamad in his official capacity.

#### 1. Municipal Liability Claim Under § 1983

It is well established that "a local government may not be sued under [§] 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978). Instead, municipalities face § 1983 liability "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury . . . ." *Id*. To establish municipal liability, a plaintiff must identify three elements: (1) an official policy or custom, of which (2) a policymaker had actual or constructive knowledge, and (3) a constitutional violation

whose moving force is that policy or custom. *Pineda v. City of Hous.*, 291 F.3d 325, 328 (5th Cir. 2002) (citing *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001)).

### a. Official Policy or Custom

The first element requires that Plaintiff adequately plead an official policy or custom. "[A] policy can be shown through evidence of an actual policy, regulation, or decision that is officially adopted and promulgated by lawmakers or others with policymaking authority." *Valle v. City of Hous.*, 613 F.3d 536, 542 (5th Cir. 2010). Although a "single decision by a policy maker may, under certain circumstances, constitute a policy for which a municipality may be liable[,] . . . this 'single incident exception' is extremely narrow and gives rise to municipal liability only if the municipal actor is the final policymaker." *Id.* at 541–42 (citations, brackets, and some internal quotation marks omitted).

A custom is "a persistent, widespread practice of City officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Piotrowski*, 237 F.3d at 579 (citation omitted); *see also Bennett v. City of Slidell*, 735 F. 2d 861, 862 (5th Cir. 1984). To establish a custom, a plaintiff must demonstrate "a pattern of abuses that transcends the error made in a single case." *Piotrowski*, 237 F.3d at 582 (citation omitted). Prior incidents "cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question. That is, notice of a pattern of similar violations is required." *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005) (citations omitted); *see also Oporto v. City of El Paso*, No. EP–10–CV–110–KC, 2010 WL 3503457, at *6 (W.D. Tex. Sept. 2, 2010) (To survive a motion to dismiss on an unconstitutional unwritten policy or

8

customary-practice claim, a plaintiff must plead sufficient facts to "allow the Court to draw the reasonable inference that [the City has] engaged in a pattern of misconduct.").

Plaintiff alleges the following customs[1] caused the violations of his constitutional rights and form the basis of the City's liability under § 1983:

(1) Encouraging, facilitating, engaging, or acquiescing in the use of coercive tactics and improper conduct by police officers against citizens and members of the public to harass, embarrass, or intimidate such individuals through such means as pretextual traffic stops, drive-by's, making public displays, wrongful detentions, and false arrests;

(2) Failing to properly and adequately train police officers [. . .] regarding the appropriate use of force and lawful conduct during traffic stop encounters with civilians, lawful searches and seizures, detentions and arrests, and failing to adequately supervise, discipline, transfer, monitor, counsel, and/or otherwise control police officers . . . ;

(3) Turning a blind eye and attempting to silence citizens who complained about police officers [. . .] who were abusing their authority, harassing, annoying, and intimidating citizens;

(4) Encouraging, facilitating, engaging or acquiescing in police officers' use of government vehicles and equipment for improper purposes . . . ; and

(5) Failing to sanction or terminate police officers who engaged in gross misconduct and allowing them to resign so that they may continu[e] working in law enforcement . . . .

(First Am. Compl. ¶ 117).

To support the existence of these customs, Plaintiff makes the following allegations.

- Despite a complaint from Maypearl citizen James Meyer ("Meyer") that Chief Coffey engaged in sexual misconduct with high school girls while he was a MPD officer, Chief Coffey was promoted to MPD Chief of Police. (*Id.* ¶¶ 14–15, 29, 32).

---

[1] While Plaintiff refers to these five customs as "*de facto* policies, practices and/or customs," he alleges no facts establishing that they are policies. (First Am. Compl. ¶ 116). For instance, Plaintiff does not plead that his "*de facto* policies, practices and/or customs" are "actual polic[ies], regulation[s], or decision[s] that [have been] officially adopted and promulgated by lawmakers or others with policymaking authority." *See Valle*, 613 F.3d at 542.

- Chief Coffey "engaged in a repeated pattern of grooming and sexually abusing teenage girls," including sexual misconduct with two teenagers while employed as MPD Chief of Police. (*Id.* ¶¶ 21–25, 33–41).

- Chief Coffey "used his position of authority to harass and intimidate local citizens," including the use of excessive force against Meyer. (*Id.* ¶¶ 26–28, 30).

- Chief Coffey and other police officers intimidated Meyer's family by following them or using pretextual traffic stops to question them. (*Id.* ¶ 31).

- Chief Coffey downloaded photographs of females, including minors, that he came in contact with as a MPD officer to his personal computer. (*Id.* ¶ 42).

- In 2015, the CBS affiliate in Dallas-Fort Worth ran a news story about documents showing "several sex-related scandals" involving MPD officers over the preceding few years, including Maypearl citizen Britannie Lyon's sexual harassment complaint against MPD Officer John Bentley ("Officer Bentley"). (*Id.* ¶¶ 44–47).

- Despite the sexual harassment complaint against him, Officer Bentley was reinstated to the MPD. (*Id.* ¶¶ 48–50).

- Officer Mohamad was "notorious" for harassing citizens and numerous citizen complaints were made against him. (*Id.* ¶¶ 53–54).

- Maypearl citizens created a Facebook page called "Where's Officer Mohamad?" in order to "mitigate his negative impact on the community." (*Id.* ¶¶ 55–59).

- Despite the Facebook page and numerous complaints against Officer Mohamad, Maypearl's mayor, city council, and Chief Coffey "tried to silence the very people they were sworn to serve and protect." (*Id.* ¶ 61).

- Chief Coffey ignored Plaintiff's request "to get [Officer] Mohamad off his back" with regard to the Allen Citation. (*Id.* ¶¶ 78–80).

- Officer Mohamad employed abusive and unlawful behavior over three encounters with Plaintiff, including the May 27 Incident. (*Id.* ¶¶ 69–77, 81–107).

In its Motion to Dismiss, the City argues these factual allegations fail to establish the existence of Plaintiff's five alleged unconstitutional customs. (City Mot. Dismiss at 5–8). The Court agrees.

First, Plaintiff does not plead enough specific facts to allow the Court to reasonably infer that Chief Coffey or MTD had a custom of encouraging coercive tactics by police officers. (First Am. Compl. ¶ 117). Plaintiff's allegations that Chief Coffey "used his position of authority to harass and intimidate local citizens," and that Officer Mohamad was "notorious" for harassing citizens and had numerous complaints against him are conclusory. Additionally, his specific allegations that Chief Coffey used excessive force against Meyer, and that Officer Mohamad used excessive force against Plaintiff are not sufficient to establish "a pattern of abuses." *Compare Harvey v. Montgomery Cnty.*, 881 F. Supp.2d 785, 797–98 (S.D. Tex. 2012) (allegations of several specific incidents involving excessive force and 200 complaints of excessive use of force were sufficient to state a claim) *with Moreno v. City of Dall.*, No. 3:13-CV-4106-B, 2015 WL 3890467, at *8–9 (N.D. Tex. June 18, 2015) (allegations of eight prior incidents in which police officers used excessive force were not sufficient to indicate a pattern).

Further, some of Plaintiff's allegations are not similar to Plaintiff's specific constitutional violations of excessive force and false arrest. *See Estate of Davis ex rel. McCully*, 406 F.3d at 383 ("[N]otice of a pattern of similar violations is required."). For example, the alleged Facebook complaints against Officer Mohamad and the alleged intimidation of Meyer's family by Officer Coffey and other officers support the claim that Officer Mohamad and Chief Coffey made improper traffic stops, not that they used excessive force or made false arrests. *See Vouchides v. Hous. Cmty Coll. Sys.*, No. H-10-2559, 2011 WL 4592057, at *13 (S.D. Tex. Sept. 30, 2011) (disregarding letters from ten of defendant's fellow police officers because complaints

11

about her workplace behaviors, e.g. not sharing the patrol car, were not similar to plaintiff's excessive force, unlawful stops, or unlawful detention claims against defendant).

Second, Plaintiff does not provide factual support for a custom of failing to properly and adequately train police officers. (First Am. Compl. ¶ 117). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). For liability to attach based upon an inadequate training claim, the plaintiff "must allege with specificity how a particular training program is defective." *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005). Plaintiff does not point to a specific training program or identify what training or supervision should have occurred to prevent the allegedly unconstitutional actions of Chief Coffey and the MPD. *See Speck v. Wiginton*, No. 14–10955, 2015 WL 1195829, at *2 (5th Cir. Mar. 17, 2015) (holding that dismissal of a failure to train claim is proper when plaintiff alleges no facts about what training the city provided or failed to provide).

Third, Plaintiff does not allege sufficient facts to establish a custom of "[t]urning a blind eye and attempting to silence citizens who complained about police officers . . . ." (First Am. Compl. ¶ 117). Plaintiff contends that Chief Coffey was promoted to Chief of Police despite a complaint that he engaged in sexual misconduct with high school girls; that Officer Bentley was reinstated to the MPD despite a sexual harassment complaint against him; that Maypearl's mayor, city council, and Chief Coffey "tried to silence" the Facebook page about Officer Mohamad; and that Chief Coffey ignored Plaintiff's request "to get [Officer] Mohamad off his back" with regard to the Allen Citation. (*Id.* ¶¶ 21–42, 48–50, 52–61, 78–80). These incidents are not sufficient to demonstrate "a pattern of abuses." *See Piotrowski*, 237 F.3d at 579. Further,

12

these incidents are not similar to Plaintiff's constitutional violations of excessive force and false arrest. *See Estate of Davis ex rel. McCully*, 406 F.3d at 383.

Fourth, Plaintiff's First Amended Complaint does not support the existence of a custom of encouraging "police officers' use of government vehicles and equipment for improper purposes . . . ." (First Am. Compl. ¶ 117). The only potentially relevant allegation is that Chief Coffey improperly used his police car and other police equipment to facilitate sexual misconduct with teenagers. (*See, e.g., id.* ¶ 41 ("[Chief] Coffey also drove by Child #3's house at night using his Maypearl police vehicle and flashed the lights of his vehicle inside the child's house to get her to come outside.")). However, these alleged incidents by Chief Coffey alone do not constitute "a pattern of abuses," and are not similar to Plaintiff's complaints of excessive force and false arrest. *See Piotrowski*, 237 F.3d at 579; *Estate of Davis ex rel. McCully*, 406 F.3d at 383.

Fifth, Plaintiff does not plead enough specific facts to allow the Court to reasonably infer the existence of a custom of failing to sanction or terminate police officers who engaged in gross misconduct. (First Am. Compl. ¶ 117). As explained above, Plaintiff's allegations regarding Chief Coffey's promotion and Officer Bentley's reinstatement to the MTD, despite complaints against them, are not enough to establish "a pattern of abuses." *See Piotrowski*, 237 F.3d at 579. These incidents also do not show that Chief Coffey or MPD engaged in excessive force and made false arrests. *See Estate of Davis ex rel. McCully*, 406 F.3d at 383.

For these reasons, Plaintiff has not adequately pleaded a relevant official policy or custom.

### b.     Policymaker with Actual or Constructive Knowledge

To bring a claim for municipal liability, Plaintiff must also show that "[a]ctual or constructive knowledge of [a] custom must be attributable to the governing body of the municipality or to an official to whom that body has delegated policy-making authority." *Piotrowski*, 237 F.3d at 579 (internal quotation and citation omitted). An official can be "a policymaker who has the responsibility for making law or setting policy in any given area of a local government's business or a decisionmaker who possesses final authority to establish municipal policy with respect to the action ordered." *Sanchez v. Gomez*, No. 17-cv-133, 2017 WL 4479260, at *5 (W.D. Tex. Oct. 6, 2017) (internal citation and quotations omitted). "Actual knowledge can be shown by such means as the topic being discussed at city council meetings." *Flanagan v. City of Dall., Tex.*, 48 F. Supp. 3d 941, 949 (N.D. Tex. 2014). "Constructive knowledge may be attributed to the governing body on the ground that it would have known of the violations if it had properly exercised its responsibilities, as for example, where the violations were so persistent and widespread that they were the subject of prolonged public discussion or of a high degree of publicity." *Id*.

Plaintiff claims that Chief Coffey, as the Maypearl Chief of Police, is the policymaker responsible for the customs that allegedly caused the violations of Plaintiff's constitutional rights.[2] Plaintiff asserts that,

> At all relevant times while [Chief] Coffey served as Maypearl's chief of police, Maypearl's official job description for such position provided that the chief of police was a policymaker responsible for, among other things: formulating orders and regulations; supervision and management of the overall operations of the

---

[2] At certain points in the First Amended Complaint, Plaintiff suggests that Maypearl's mayor and city council may also be final policymakers. (*See, e.g.*, First Am. Compl. ¶¶ 119–20). However, Plaintiff alleges no facts to support this allegation. Thus, Plaintiff has failed to sufficiently plead that Maypearl's mayor or city council are final policymakers.

14

> MPD; planning, coordinating and directing all aspects of MPD operations; and supervising MPD employees, including but not limited to patrol officers . . . .
>
> Maypearl's mayor and city council also made [Chief] Coffey a *de facto* policymaker after promoting him to chief of police by empowering, authorizing, and deferring to [Chief] Coffey to formulate and implement official city policies, practices and/or customs for and on behalf of Maypearl with respect to all aspects of the MPD and its operations.

(First Am. Compl. ¶¶ 16–17).

These allegations, taken as true at the dismissal stage, are sufficient to state a claim that Chief Coffey has final policymaking authority with respect to the MPD customs. However, Plaintiff fails to allege that Chief Coffey had actual or constructive knowledge of the alleged unconstitutional customs. Plaintiff asserts, "[a]t all relevant times herein, Maypearl, its mayor, city council and Police Chief Coffey encouraged, permitted, knew about and/or acquiesced in the MPD's policies, procedures and/or customs that encouraged and fostered an atmosphere of abusive and harassing conduct and intimidation tactics by its officers . . . ." (*Id.* ¶ 109). This conclusory allegation, coupled with the other incidents Plaintiff describes, does not allow the Court to draw the reasonable inference that there were prior instances where MPD officers had used excessive force or made false arrests, such that these instances would alert Chief Coffey to a widespread practice so pervasive as to constitute a custom. Thus, Plaintiff has failed to plead adequately that Chief Coffey had actual or constructive knowledge of a relevant custom or policy.

### c. Constitutional Violation Whose "Moving Force" is that Policy or Custom

To plead municipal liability, Plaintiff must show that the alleged customs were the "moving force" behind his asserted constitutional violations. This element of municipal liability encompasses two requirements. First, a plaintiff "must demonstrate a direct causal link between

the municipal action and the deprivation of federal rights." *Valle*, 613 F.3d at 542 (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)). Second, a plaintiff "must show that the municipal action was taken with the requisite degree of culpability." *Id.* Specifically, a plaintiff "must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Id.* Simple or even heightened negligence is insufficient to meet the deliberate indifference requirement. *Piotrowski*, 237 F.3d at 579 (quoting *Brown*, 520 U.S. at 407).

Here, Plaintiff fails to demonstrate in his pleading that the five alleged customs were the "moving force" behind his assertions of excessive force and false arrest, and that Chief Coffey acted with deliberate indifference in implementing those customs. Plaintiff asserts that the five customs "were maintained and implemented with deliberate indifference by Chief Coffey, the mayor and/or city council and were, separately and together, a moving force and a direct and proximate cause of the deprivation of Plaintiff's rights during the [May 27 Incident] . . . which rights are guaranteed under the Fourth and Fourteenth Amendments . . . ." (First Am. Compl. ¶ 120). This conclusory allegation is alone insufficient to permit the Court to draw the reasonable inference that the five alleged customs were the moving force behind Officer Mohamad's alleged use of excessive force and false arrest, or that Chief Coffey was deliberately indifferent to the risk that implementing the five alleged customs would result in a violation of constitutional rights from the use of excessive force or a false arrest.. *See Moreno*, 2015 WL 3890467, at *10 (finding plaintiff's conclusory allegation that "[t]he implementation of the above practices, failures to implement and enforce written policies, and the lack of adequate training by the City constitutes deliberate indifference," combined with plaintiff's inability to establish a pattern of similar constitutional violations was insufficient); *Pinedo v. City of Dall.*,

*Tex.*, No. 3:14-CV-0958-D, 2015 WL 221085, at *7 (N.D. Tex. Jan. 15, 2015) (determining plaintiff's conclusory allegation that the city's "failure to provide adequate training to its police officers regarding the use of deadly force reflects deliberate indifference and reckless and conscious disregard for the obvious risk that officers would use excessive or deadly force on citizens" was insufficient).

Accordingly, because Plaintiff has not sufficiently pleaded his municipal liability claim against the City, the Court DISMISSES WITHOUT PREJUDICE Plaintiff's § 1983 municipal liability claim against the City.

### 2. State Tort Claims Against Officer Mohamad in His Official Capacity

The City also moves to dismiss Plaintiff's state court claims for intentional infliction of emotional distress and assault and battery against Officer Mohamad in his official capacity. (City Mot. Dismiss at 11–13). However, in response, Plaintiff clarifies that his First Amended Complaint "does not assert any claims for constitutional violations or intentional torts against [Officer] Mohammad in his 'official capacity . . . .'" (Corrected Resp. City Mot. Dismiss, ECF No. 17 at 20).

Upon review of Plaintiff's First Amended Complaint, Plaintiff states, "Plaintiff [ ] files this First Amended Complaint against Defendants, the City of Maypearl, Texas, and Shahid Azzam Mohamad, Individually and in his official capacity as a City of Maypearl Police Officer . . . ." (First Am. Compl. at 1). Plaintiff also alleges, "[Officer] Mohamad is sued in his individual capacity and in his capacity as an officer and employee of the MPD." (*Id.* ¶ 11). In light of Plaintiff's clarification and intention not to bring any claims against Officer Mohamad in his official capacity, the Court DISMISSES WITH PREJUDICE Plaintiff's claims for intentional

infliction of emotional distress and assault and battery against Officer Mohamad in his official capacity.

**B.    Officer Mohamad's Motion to Dismiss**

Officer Mohamad moves to dismiss Plaintiff's § 1983 claims for excessive force and false arrest against him in his official capacity. (Mohamad Mot. Dismiss at 3). In response, Plaintiff clarifies,

> In filing the First Amended Complaint, Plaintiff did not intend to assert any claims against [Officer] Mohamad in his official capacity, but only in his individual capacity. The style and preamble on Page 1 and ¶ 11 in the First Amended Complaint inadvertently include holdover references alluding to official capacity, but the actual causes of action in Count 2 to 5 [for excessive force under § 1983, false arrest under § 1983, intentional infliction of emotional distress, and assault and battery] in the Complaint are asserted against [Officer] Mohamad in his individual capacity only.

(Resp. Mohamad Mot. Dismiss, ECF No. 15 at 7).

Because of Plaintiff's intention not to bring § 1983 claims against Officer Mohamad in his official capacity, the Court DISMISSES WITH PREJUDICE Plaintiff's claims under § 1983 for excessive force and false arrest against Officer Mohamad in his official capacity.

**IV.   Conclusion**

In sum, the City's Motion to Dismiss (ECF No. 8) is **GRANTED**. Plaintiff's municipal liability claim under § 1983 against the City is **DISMISSED WITHOUT PREJUDICE**. Plaintiff may replead within twenty days of the date of this Order in an effort to correct the noted pleading deficiencies for these claims. Plaintiff's claims for intentional infliction of emotional distress and assault and battery against Officer Mohamad in his official capacity are **DISMISSED WITH PREJUDICE**.

Officer Mohamad's Motion to Dismiss claims against him in his official capacity (ECF No. 9) is **GRANTED**. Plaintiff's § 1983 claims for excessive force and false arrest against Officer Mohamad in his official capacity are **DISMISSED WITH PREJUDICE**.

**SO ORDERED.**

February 2, 2018.

_____
BARBARA M. G. LYNN
CHIEF JUDGE